# Richmond

## NATURAL GAS COMPANY OF VIRGINIA, INCORPORATED V. COMMONWEALTH OF VIRGINIA.

November 24, 1947.

Record No. 3256.

Present, Hudgins, C. J., and Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*May, Simpkins, Young and Rudd*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Walter E.*

*Rogers, Assistant Attorney General,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In the early part of 1946 the Commonwealth of Virginia, through the Department of Taxation, assessed the Natural Gas Company of Virginia, Incorporated, hereinafter called the Natural Gas Company, with a commission merchant's license taxes for the years 1943 to 1946, both inclusive, under section 174 of the Tax Code, as amended.[1] Having paid the taxes under protest, the Natural Gas Company filed this proceeding in the court below, alleging that the assessment was erroneous and praying for its correction and for a refund of the taxes paid thereunder. The case is now before us on a writ of error to a final judgment denying the relief prayed for.

Section 174 of the Tax Code, as amended, defines a "broker" and a "commission merchant" and provides for the levying of a State license tax against each. It defines a "commission merchant" as, "Every person, firm or corporation, buying or selling for another any kind of merchandise, on commission, * * * ."

The Natural Gas Company is a Virginia corporation with its principal office in the city of Richmond. It has a storeroom in that city where it displays and sells, at retail, appliances for the use and consumption of heating and cooking gas. For the privilege of conducting that portion of its business, which is not here involved, the company pays a merchant's license tax.

In addition to such business, the Natural Gas Company, as an independent contractor, acts as the exclusive medium or sales' agency of the Carbide and Carbon Chemicals Corporation of New York, through which a type of cooking and heating gas, manufactured by the New York con-

---

[1] Tax Bill, sections 48, 49 (Acts 1914, ch. 280, p. 487, Acts 1915, Ex. Sess., ch. 148, p. 232, Acts 1922, ch. 70, p. 109, Acts 1942, ch. 182, p. 238).

cern and known as "Pyrofax" gas, is marketed in certain counties in Virginia. It is this latter business of the Natural Gas Company which is the subject of the present controversy. The specific question presented is whether in the conduct of such business the Natural Gas Company is a commission merchant as that term is defined in section 174 of the Tax Code, as amended.

Under the terms of the written contract or "franchise" between the parties, the Natural Gas Company is denominated the "distributor" for "Pyrofax" gas within the allotted territory. The "distributor" "may solicit applications for 'Pyrofax' gas service from prospective customers in the territory," and promises to "use his best efforts to promote the use" of such gas "within the territory." At the solicitation of the Natural Gas Company a prospective customer signs a written application or order, directed to the New York company, for the purchase of "Pyrofax gas service," which application or order becomes final if and when it has been accepted by the New York company.

The New York company maintains a "plant" at Norfolk to which it ships cylinders containing Pyrofax gas. The Natural Gas Company accepts delivery of these cylinders from the New York company, at Norfolk, and delivers them to such customers whose applications or orders have been accepted or approved by the New York company. The Natural Gas Company connects the cylinders containing the gas with the customers' appliances. When the gas in a cylinder becomes exhausted the Natural Gas Company disconnects the cylinder and replaces it by one filled with gas. It returns the empty cylinders to the warehouse of the New York company at Norfolk.

The Natural Gas Company maintains a warehouse at Richmond for the storage of loaded gas cylniders awaiting delivery to customers, and of empty cylinders to be returned to the New York company's plant at Norfolk.

At the time the loaded cylinder or cylinders are delivered

to the customer, the latter is given a combination delivery ticket and invoice which runs in the name of the Natural Gas Company and directs that payment of the bill should be made to it at its Richmond office. The Natural Gas Company, in its own name, undertakes the collection of these bills and remits therefor to the New York company. In most instances it guarantees to the New York company the payment of such invoices.

"For all services" of the Natural Gas Company, under the terms of the contract, it is paid a monthly commission of 38.5% of "the net sales vaue" of such Pyrofax gas as is sold within its territory to all customers other than industrial users.

While J. T. Terrell, president of the Natural Gas Company, insisted that his company did not "sell" the gas, he admitted on cross-examination that, "We do everything to sell gas appliances and promote the use of Pyrofax gas because we get 38.5 per cent. from them for doing just what I told you we do, and naturally we are going to promote it."

He further admitted that the Natural Gas Company runs the following advertisement in the classified section of the Richmond telephone directory:

"PYROFAX SALES AND SERVICE

"For cooking, heating, gas refrigeration and lighting. Affords beauty, durability,          PYROFAX convenience, economy and complete safety. Dependable gas service beyond the gas mains.

"WHERE TO BUY IT

"NATURAL GAS CO. OF VA., INC.

"209 W. Broad          3-8958"

Upon this evidence the trial court, in a short memorandum opinion, concluded that it was shown "by a preponderance of the evidence" that the Natural Gas Company "was selling for another merchandise on commission," and hence was a commission merchant within the purview of the statute.

It will be observed that since the statute in terms defines a commission merchant, our inquiry is within a narrow range. We are not concerned with whether, as the Natural Gas Company argues, its business is that of a commission merchant, as that term is known to the common law. Our only concern is whether such business comes within the terms of the statutory definition of a commission merchant. We agree with the learned trial court that it does.

The Natural Gas Company argues that its business does not come within the statutory definition, because, it says, it does not *sell* any merchandise for the New York concern, nor does it receive any *commission* for any sales. Indeed, it is said that if the Natural Gas Company is taxable at all under section 174 of the Tax Code, it should be as a "broker" and not as a "commission merchant."

The section defines a "broker" as, "Every person, firm or corporation, doing business in this State who receives or distributes provisions and merchandise, including flour, hay or grain, shipped to such person, firm or corporation for distribution on account of the shipper, or who participates in the profits, ensuing from or accruing out of the sales of such provisions or merchandise, * * * or who invoices such sales or collects the money therefor."

The argument is that the Natural Gas Company does not *sell* the gas but merely *"receives or distributes"* it and is paid for doing so.

We cannot agree with this contention. Under the terms of the contract, one of the main functions of the Natural Gas Company is that embraced within the paragraph captioned, "SALES PROMOTION." Under this paragraph it is agreed that the Natural Gas Company "may solicit applica-

tions for 'Pyrofax' gas service from prospective customers" and "shall use his best efforts to promote" the use of the product.

According to the evidence, in furtherance of the terms of the contract, the Natural Gas Company solicits applications of prospective customers for the product. It advertises in its own name "where to buy" "Pyrofax Sales and Service." When an application has been approved by the New York concern, the Natural Gas Company completes the sale by delivering the gas to the customer, as and when he needs it.

Moreover, as has been said, the Natural Gas Company collects the purchase price of the product in its own name and remits to its principal therefor.

In other words, the Natural Gas Company promotes, negotiates and completes the sale of the product and collects and remits to its principal the purchase price thereof. This, we think, constitutes a "selling" within the meaning of the statutory definition.

Nor is there any substance to the contention of the Natural Gas Company that it is not paid a commission for its sales. Under the paragraph of the "franchise," captioned "COMMISSION," it is provided that the New York company "shall pay" to the Natural Gas Company "for all services" under the contract "a commission of 38.5 per cent. of the net sales value of 'Pyrofax' gas sold by (the New York) Company to consumers located within the territory." Plainly, the most important portion of the services performed by the Natural Gas Company for its principal is that of promoting, negotiating and completing the sales of gas within the allotted territory. Indeed, such services are the heart and soul of the contract. It would be absurd, then, to hold that no part of the commission was intended as compensation therefor.

The judgment is

*Affirmed.*